is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 221185 and 221186 United States v. Miguel A. Reyes-Ballista. Will counsel for appellant please come up and introduce yourself on the record to begin. Just before you start I just thought I would say a word. I know Judge Helpe understand that yesterday's argument mentioned the passing of our colleague Judge Selya but as the Chief Judge of the circuit I just wanted to send my own wishes to his family and to make a special point which I'm sure Judge Helpe mentioned as well about the deep connection that Judge Selya felt to the people of Puerto Rico and the legal community in Puerto Rico. We had the funeral services for him yesterday which was a moving occasion and I know it's wonderful for our court to be here as always but there's a certain sadness in knowing that Judge Selya is not part of that court at present so I just want to pass those sentiments along. Good morning Appellate Counsel Rafael Anglada Lopez on behalf of Appellant may it please may it please the court your honor I would like to request two minutes. You may. Your honor this appeal contains two appellate matters. The first one is ineffectiveness of counsel and the second one is insufficiency of the evidence. Allow me to argue ineffectiveness first. Reyes Ballesta filed multiple motions for withdrawal of counsel and absence of communication and trust with what I would call the first CIA counsel and subsequent court hearings were held on that subject. Appellant was encountering two indictments, consolidated indictments, five days long jury trial, 13 government witnesses, 12 of them expert witnesses and or law enforcement witnesses and one co-participant. The defense presented a very scant and or insignificant or no cross examination at all and no defense experts or fact witnesses failing to present any defense at all. The court Judge Thompson has a question. Sorry? Judge Thompson has a question. Yes yes your honor. How how are we supposed to determine that the record is sufficiently developed enough on direct appeal to figure this out? Because with respect to no witnesses, no expert, the attorney could very well have made a strategic determination that it would have done more harm than good or perhaps the expert that was detained by the defendant wound up agreeing with the state's government's experts and so I just don't see that and these kinds of ineffective counsel issues are usually brought up on habeas conditions and where there is a much more developed record because there's an opportunity to do so in the first instance. Your honor, the first matter is I respect the issue as to the strategic decision of the defense counsel or the defense team but this case included two fingerprint experts, two chemist experts in addition to law enforcement agents and one co-participant. It is very difficult to encounter to defend someone without having any defense theory at all, any defense witnesses and on the what I would consider your second question, I would invite the court to closely examine the two substantive motions for withdrawal of counsel, docket numbers 191-194 and 195-197-204. This happened six months before the actual trial. This was in the period of 2021 and trial began on August 4th, 2021. Of course, we know that the world was encountering the COVID-19 pandemic and many matters were somehow disrupted. Our theory is that sort of everything is on the record. Not only if I may, those... But you haven't told us for instance, there was an expert that was retained by the defendant and we have no indication as to what the expert would have said if called to testify or if there were other defense witnesses that your client wanted presented to those people on what they may have testified to. Your Honor, first, a defense expert witness appeared at the time of Dobert hearing and that matter was decided by the honorable court by basically characterizing that the expert first would say in writing that the so-called examination HCE-V, which is like the way fingerprint experts work, was not correct. And then at the time of the hearing of the Dobert hearing, the thrust of the expert testimony, in other words, the thrust of the CJA counsel's to the expert was on whether certain photographs were taken to every latent print. The theory was that three photos were required, sort of long distance, shorter distance, and close up distance. That's nowhere in the doctrine. And that was what the court decided that the expert was announced for one matter and came up arguing another matter. I am not referring to that, what I would call first expert at the time of Dobert hearing, which was held approximately November 2020. The trial began on August 4th, 2021. As a matter of fact, one of the matters that the first CJA counsel first argued early on that he would present an expert and then he would say he would present no experts and no witnesses. So in a way, you know, the counsel was showing his cards two years in advance. Counsel, can I just move you, if we did consider your Sixth Amendment an effective claim on direct appeal, if we got to that part of the analysis, I'm wondering if you can explain what you think your strongest argument is on the prejudice prong, because this is a case where your client, at least for the trial, had two attorneys representing him. And of course, our case law says that ineffective claims are even harder when there are multiple attorneys. And in addition, you've been focusing on the fingerprint evidence. I understand why you're doing that, but there were lots of other key evidentiary issues in this case. So your best argument is that there was prejudice here. Your Honor, let me first say that the second CJA counsel was appointed five days before commencement of trial under the theory that even one day before would be enough. I have been there and I was once appointed, but granted 11 days in advance. On the second issue, which I, on the prejudice, allow me to say that one alternative would have been to negotiate the case, to enter into a plea of guilty. That would be a better outcome in reference to deference. And in the alternative, by bringing witnesses and by bringing a defense theory, a theory of the case, that is why, that's what I argue in reference to the second strict land requirement. And again, Your Honor, I am sorry, I am sorry, just one sentence. I am trying to argue that there has to be a fairness. There has to be a real Sixth Amendment protection to the appellant. I think it's right. Yes. Thank you, Your Honor. Thank you very much. Thank you, counsel. Will the attorneys for Appalachia please come up and introduce yourself on the record to begin? Good morning, Your Honors, and may it please the court, Gabriela Paglieri on behalf of the United States. The court should affirm Treyus' convictions and the district court's judgments in this case because the evidence presented at trial was more than sufficient to establish guilt beyond a reasonable doubt and because Treyus' ineffective assistance of counsel claim is meritless. I will start with the ineffective assistance of counsel claim to follow appellant's arguments. So, best case scenario for Treyus is that the record is not fully developed on his claims. But here, where the court held three hearings on his motions for substitution and the motion to withdraw, the court may resolve the ineffective assistance of counsel claim, but can only resolve it against Treyus. Everything that he argues, the record shows that it's baseless. For example, he says here that counsel did not cross-examine the experts, but defense counsel did cross-examine and got out of the experts that there was an element of subjectivity. And that is his big issue with the ACV method used by the experts. And he got that out of the experts. Now, he also doesn't say what witnesses he would have put on or what other experts he would have put on. As to the expert, the Daubert hearing, that was a strategic choice of not putting the expert. And you can see that from the hearing held on the motion to withdraw at docket entry 348, page 23. And there he says the judge had a sidebar with the attorneys and they discussed why an expert wasn't being brought. And the judge, on the record, said it was a strategic choice and explained that to Treyus. And also, during the Daubert hearing, Treyus's expert testified that the ACV method used by the government's experts in this case was correct. So, it follows why it was a strategic choice. And now, as to prejudice, he has never alleged there was any prejudice by the alleged ineffectiveness. That Boucher was appointed, Attorney Boucher, the second attorney, was appointed five days early. Well, the court did not even have to appoint him. The court appointed him out of an abundance of caution after finding on the record that all of his claims of lack of communication and failure to follow were meritless. She appointed Boucher to kind of dissuade any tensions that were being had between the defense counsel and Treyus. But then, on the record also, had Boucher asked him, are you prepared? Did you have enough time to prepare? And he said, yes. They have met with Treyus for three hours. The attorneys have been working nonstop and would be working with him up to trial. And you can see from the record, from the transcript of the trial, that he had a defense, that they brought motions all throughout. They brought two motions for acquittal after the close of the evidence. So, he had a defense. Counsel, counsel, so it sounds like the government actually doesn't object to us considering the Sixth Amendment claim on the merits. You think the record here is sufficiently developed for us to review it on direct appeal? Correct. We argued on our brief that it wasn't because consistent with this court's holdings saying that this court has held with regularity, bordering on the monotonous, that these claims cannot be. I thought I heard you say you only supported it if you win. That is correct. Well, we say that based on the existing record, the only way that this court may resolve it, but the only way it can resolve it is against Treyus. So, just looking at the merits, which is what you've been arguing, what about the fact here that there was an ethics complaint filed against Mr. Reyes's attorney? That obviously does put, you're an attorney, you can understand how that would put an attorney in a very difficult situation to continue doing your absolute best for a client who's just filed an ethics complaint against you and that you need to defend yourself in front of the Supreme Court of Puerto Rico. How do you think that should impact our analysis here? Well, I don't think it should impact the analysis in any way in favor of Reyes because that motion to withdraw, the counsel filed a motion to withdraw after he filed the ethical complaint and it was reciting the same issues he had brought up in the previous motions for substitution for which the court had held two hearings already. Then the court holds a third hearing and explains what the contents of that ethical complaint were and they were his allegation, which he had brought previously and was discussed thoroughly in the hearings, that there was a conflict of interest between the CJA attorney and the judge because the judge was part of the, was a chair on the panel. And she, the judge, thoroughly explained to him that that didn't present a conflict, that she was one out of nine or seven members on the panel, that there were 75 attorneys on the CJA and there was no incentive to the attorney to do stuff or not do things because he owed anything to the judge. I think what you're arguing is that you think the ethical complaint is not meritorious and that seemed to be what the district court conclude, but I guess I'm asking a different question, which is that whether it's meritorious or not, when an attorney has a client file an ethical complaint against them and then has to proceed and in theory do their, you know, best defense for that client, that's a very tricky situation and this attorney actually moved to withdraw and was not able to withdraw. So again, just looking at the merits of the Sixth Amendment claim, why isn't that enough to show potential prejudice when you've got an attorney forced to continue representing you after you filed an ethical complaint against them? Yes, well, here on the record, after the counsel presented that precise point that Your Honor is making, that there he is now in conflict with his client, then he was asked by the by the court, hey, and he said, I still have good communication, I still want to be on this case, I can represent him, and he did. And also that is where attorney Boucher comes in. The judge, knowing that this attorney, the CJA attorney had been preparing for trial for a very long time and was very knowledgeable in the case and had defended Reyes vigorously, then appointed a second attorney to kind of dissuade any tension that he may have with, that the CJA attorney may have with Reyes. But you can see from the record that that tension, whatever that tension was, it didn't hurt Reyes at all. He defended, he defended Reyes vigorously, he brought motions for acquittal, raising the same arguments that this new attorney now raises on the insufficiency here on appeal. So there is no basis for the, for the ineffective assistance of counsel claim. And finally, as to the sufficiency, I just want to point out that there was more than sufficient evidence. We have witness testimony, his fingerprints in all, in three of the five seized parcels with the cocaine, and also overwhelming corroborating evidence. And if the panel doesn't have any further question, we ask the court to affirm and yield the reservation. I would just like to get back to Judge Rippleman's question. When the court made inquiry into whether there was a conflict after the attorney moved with Roth, did, did the court inquire of the defendant as to his reasons for saying that there was no communication? Yes, he did. The judge did and went through each point. And the court, did the court make findings of that? Yes, the court held that there was ample communication between the, between Reyes and his CJA attorney. And what constitutes ample from the district court's perspective? If I, I don't have their record in front of me, but if I, just paraphrasing, she said that there had been ample communication and you can, you can tell from the motions that have been filed and from what Reyes was arguing in that hearing. She said there was no merit. His basis for lack of communication, most of it came from his issue where you can see from the record is that he had an issue with counsel not wanting to move to dismiss the case for the, what he claimed was erroneous or improper expert testimony. And the judge explained to him that that was already resolved in the denial of the Daubert motion and that he could cross-examine the experts at trial and present his own expert, but that was not a meritorious basis to dismiss the case. And that was his main argument and main problem with his defense counsel, that he did not want to move to dismiss the case on that basis. And so, just more specifically, when the court, when the district court is trying to make a determination as to whether the ethical filing interferes with the attorney's ability to zealously represent the client, I mean, the inquiry from your perspective is objective? The court takes a look at what is actually going on and it makes a determination that the ethical complaint won't interfere? I mean, it's got to be something more than the attorney representing, I think I can do this, doesn't it? Yes, and I think in this case the court did both, a subjective analysis and an objective. He first, she first looked at the claims and on which he based, and if I may finish, on which he based the arguments and decided that they were meritless and then subjectively asked both Reyes and counsel whether they could continue and counsel said yes, and so it was both. I just got a little confused. I thought we had a Strickland claim, correct? Correct. That's the only ineffective assistance claim? That is correct. And then we just have a sufficiency claim? That's correct, Your Honor. So, the extent that there's like a conflict-based claim, we don't quite have that. We have just a failure to provide effective representation, which is a different strain of Sixth Amendment doctrine, I thought. Yes, and Your Honor is correct. So, for that, you just need to show prejudice, as Judge Rickland's saying, and then this could lead to prejudice, but you'd have to cash out in some way. It's not clear that the mere fact that you have a shadow or that there's a difficulty constitutes Strickland prejudice. You have to show it was reasonably probable to affect the trial. Certain cases have presumptions, I thought, when there's a conflict, but there's no claim like that. There is no claim. Yeah, we don't have a, we have just a pure Strickland claim, which is why, in addition to this point, there's the argument about no experts were put forward. That's all classic Strickland-type argumentation, which then we traditionally have thought, to the extent there's something to it, that's best done on where we can have a full developed record, and it's pretty rare that we would try and deal with that on direct appeal. Yes, Your Honor, and here he only developed argument, if any, vaguely as to the lack of communication and the failure to follow orders. Other than that, he doesn't really develop argument on any of the other issues. Thank you. Thank you, Counsel. Well, Attorney Anglada-Lopez, you have a two-minute rebuttal. Please reintroduce yourself on the record. Thank you, Your Honor, Counsel Rafael Anglada-Lopez. Your Honor, first of all, I would like very much the court to pay close attention, again, to what it is in the record. A docket 197 and 211. For example, in 204, there is a very important phrase by the Honorable Court, quote, either you trust on the legal advice of your counsel or you don't. And I think that the problem is that there was never trust, never communication. It is a brother counsel, brother counsel first, CIA counsel, spend most of his time and his wisdom defending himself, trying to stay on the case, trying to preserve that appointment. And again, Your Honor, I have been there. And again, once a motion for withdrawal is argued before a court, particularly pro se, the role of defense counsel is to sort of accommodate and support what the defendant is arguing independently or whether he is right or he doesn't know the niceties of the court. I honestly, of course, I understand that the argument about the conflict of interest of the Honorable Court, whether she was presiding the committee or not, I know the answer. But the problem is that counsel was being attacked ethically before the Puerto Rico Supreme Court. His license was on the. That to me sounds more like a Kyler type claim than a straight Strickland claim. Well, but that's not what we have before. I'm following. There's other aspects which sound just like a straight Strickland claim, which is just deficient performance below the constitutional minimum. Then you have to show prejudice for it. The Kyler type claim is exactly the kind of thing you're talking about, where there's a conflict of some kind that makes it so that the lawyer can't act as a lawyer. But that is not the claim that you have on appeal. It doesn't mean you couldn't bring it on a habeas motion, but. Let me highlight another phrase before I finish. The sister for the government, sister counsel for the government argue at the time of Docket 263. There's still this issue where we have a motion filed by the defense counsel where his place, where he placed in his motion that he is in an adverse position against defendant. How can I defense anyone if I am placed on an adverse position? Thank you very respectfully. Thank you, counsel. That concludes arguments in this case.